IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY PIETOSO, | ) | |
| | ) | |
| Petitioner, | ) | C.A. No. 07-276 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| UNITED STATES FEDERAL | ) | Chief Magistrate Judge Baxter |
| PRISON, | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by federal prisoner Anthony Pietoso be denied, and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner's habeas petition is filed pursuant to 28 U.S.C. § 2241.  (Document # 1).  In the petition, he seeks a court order directing the Bureau of Prisons ("BOP") to place him on home confinement for the last 10% of his term of imprisonment in lieu of placement in a Residential Re-Entry Center ("RRC").[1]  He seeks home confinement because he is allegedly the only caregiver for his wife and parents, who are elderly and/or suffer from serious diseases.

**A.    Relevant Statutory Framework**

The BOP is vested with the authority to designate a federal inmate's place of confinement. Section 3621(b) of Title 18 of the United States Code instructs that the BOP may designate a federal inmate to "any available penal or correctional facility" upon the consideration of five

---

[1] RRCs are commonly referred to as halfway houses.  Prior to March 31, 2006, RRCs were known as Community Correction Centers ("CCCs").  Because much of the authority cited herein refers to CCCs, that term will be used interchangeably with RRCs.

1

enumerated factors: (1) the resources of the contemplated facility; (2) offense-specific information; (3) prisoner-specific information; (4) statements of the sentencing court; and (5) pertinent policy statements. 18 U.S.C. § 3621(b) (*amended by* Second Chance Act of 2007 Apr. 9, 2008). Section 3621(b) governs the initial designation of the place of imprisonment as well as any subsequent transfers to a different penal or correctional facility. The BOP interprets the phrase "penal or correctional facility" to exclude home confinement, and as a result it has determined that it "does **not** have statutory authority to designate a home confinement program" under Section 3621(b). BOP Program Statement 7320.01, Home Confinement, Page 1 (emphasis in original).

The BOP's authority to transfer an inmate to home confinement is governed by Section 3624(c) of Title 18 (*amended by* Second Chance Act of 2007 Apr. 9, 2008). Section 3624(c) deals with pre-release custody and it confers on the BOP authority to transfer a federal prisoner to a RRC and home confinement at the end of his sentence in order to assist in the inmate's transition back to the community. Under Section 3624(c), the BOP has the authority to place an inmate on *home confinement* for the last six months or 10% of his sentence, whichever is less.[2] See

---

[2]

Section 3624(c) formerly provided:

> **(c) Pre-release custody.** – The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No.110-199, was signed into law. Among its many provisions, the Act amended 18 U.S.C. § 3624(c), which now provides, in relevant part:

> **(c) Prerelease custody.** –
> (1) In general. – The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority. – The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

(continued...)

BOP Program Statement 7320.01, Home Confinement, Page 1; see also BOP Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure, Page 4 ("[Section] 3624(c) does restrict the Bureau in placing inmates on home confinement to the last six months or 10% of the sentence, whichever is less.")[3]

---

²(...continued)
According to Respondent, on April 14, 2008, the BOP provided guidance to staff for implementing the Second Chance Act of 2007. BOP staff are currently analyzing the changes that the new Act has enacted with regard to its inmates, including Petitioner. However, under either version of Section 3624(c), Petitioner will not be eligible for placement on home confinement until the last 10% of his sentence.

³Although the BOP apparently has consistently interpreted Section 3621(b) and 3624(c) to limit its authority to transfer an inmate to home confinement to the lesser of the last six months or 10% of the term of imprisonment, its policy regarding its authority to place an inmate in a CCC (now a RRC) varied and has been the subject of much litigation. Prior to 2002, the BOP had determined that it was "*not restricted by § 3624(c)* in designating a CCC for an inmate and may place an inmate in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate[.]" BOP Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure (effective December 1998) (emphasis added). In December 2002, however, the BOP changed its policy regarding CCC placement. It determined that its authority to place inmates in a CCC *was restricted by Section 3624(c)* and therefore inmates were not entitled to CCC placement until the lesser of the last six months or 10% of the term of imprisonment. The December 2002 policy spawned numerous legal challenges from inmates who previously would have been eligible for CCC placement at any time during their incarceration, including the last six months. Courts of appeals determined that the BOP's new policy was unlawful because it did not recognize the BOP's discretion to transfer an inmate to a CCC at any time, and therefore it was contrary to the plain meaning of Section 3621(b). Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004). In response to those decisions, the BOP proposed new regulations. 69 Fed.Reg 51.213 (Aug. 18, 2004). The new regulations became effective in February 2005. The regulations note the BOP's categorical exercise of discretion for designating inmates to CCC and home confinement. 28 C.F.R. § 570.20. They state that the BOP will designate inmates to CCC and home confinement only as part of pre-release custody and programming (Section 3624(c)), during the last 10% of the prison sentence being served, not to exceed six months. 28 C.F.R. § 570.21.
In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit invalidated the 2005 regulations as they relate to CCC placement because they preclude consideration of all of the factors enumerated in Section 3621(b) and do not permit the BOP to consider CCC placement prior to the last 10 %, or six months, of an inmate's sentence. Id. at 245-50. Therefore, after Woodall, Third Circuit case law establishes that the BOP may not categorically deny a federal prisoner a designation to a CCC (now a RRC) prior to the last six months, or the last 10% of his federal sentence. Disagreed with by Muniz v. Sabol, 517 F.3d 29 (1st Cir. 2008) (holding that the 2005 regulations are a reasonable exercise of the BOP's discretion in carrying out its duties under Section 3621(b)). Pursuant to Woodall, the BOP must consider the factors set forth in Section 3621(b) when determining RRC placement.
Importantly, however, the decision in Woodall did not address or invalidate the BOP's determination that *home confinement* does not fall within the definition of "penal or correctional facility" under Section 3621(b) and that its authority to place an inmate on home confinement is limited to the lesser of the last six months or 10% of the term of imprisonment under Section 3624(c). Program Statement 7320.01, Home Confinement. Additionally, in this case Petitioner does not challenge the BOP's determination that its authority to place an inmate in home confinement is derived from Section 3624(c) and is limited by the timing restrictions set forth in that statute.

3

**B.     Relevant Background**

On October 30, 2006, the United States District Court for the District of New Jersey sentenced Petitioner to a 27-month term of imprisonment with a 3-year term of supervised release to follow for "Conspiracy to Buy, Receive and Possess Stolen Goods" in violation of 18 U.S.C. § 371. The court did not make any recommendation regarding community programming during the service of Petitioner's federal sentence. On or around December 21, 2006, the BOP designated Petitioner to the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey. (Document # 8, Ex. 1a at Page 4 of 17).

On March 22, 2007, Petitioner filed a Request for Administrative Remedy with the Warden at FCI Fort Dix in which he requested to be designated to home confinement. (Id. at Page 8 of 17). The Warden denied the request as premature because Petitioner is not eligible for home confinement until he reaches his 10% date, and no decision had been made regarding whether Petitioner would be designated to home confinement when he reached his 10% date. (Id. at Page 9 of 17). Petitioner appealed the Warden's response to the BOP's Northeast Regional Office. (Id. at Page 12 of 17). In a response dated May 22, 2007, the Regional Director explained:

> Once an inmate is approved for RRC placement, [Community Corrections Manager "CCM"] staff will determine an inmate's appropriateness for home confinement as part of release preparation.
>
> A review of your case reveals that your request is premature. As indicated by the Warden, your projected release date is December 4, 2008. Your unit team will consider your release needs and make an appropriate recommendation for prerelease programs 11-13 months prior to your projected release date.

(Id. at Page 13 of 17). Petitioner appealed to the BOP's Office of General Counsel and that appeal was denied (Id. at Page 16 of 17; see also Document # 8 at 5 n.3 and Ex. 2, ¶ 9). It was noted that the Warden and Regional Director adequately addressed Petitioner's concerns. (Id.)

In the meantime, on June 22, 2007, the BOP designated Petitioner to FCI McKean, located in Bradford, Pennsylvania, which is within the Western District of Pennsylvania. On October 12, 2007, Petitioner filed with this court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Document # 1). He states that he does not need the specialized services of a RRC and that he should be transferred to home confinement when he reaches his "10% date." He requests an

4

order from this court directing the BOP to release him directly "to home confinement at his 10% date."

Respondent has informed the court that Petitioner had a Program Review meeting on January 10, 2008. (See Document # 11). During that meeting, Petitioner's Unit Team recommended Petitioner for a 150-day RRC placement, to commence between July 8, 2008 and August 7, 2008.[4] After that meeting, a RRC referral packet was prepared and, as of April 17, 2008, it still was being routed internally at FCI McKean for review and approval. Respondent explained that once the Warden of FCI McKean approves the RRC referral packet, it will be forwarded to the CCM in the area in which Petitioner's release residence is located. Petitioner will be placed in a RRC between July 8, 2008 and August 7, 2008, and then a determination will be made by his CCM as he nears his 10% date regarding home confinement. That decision will be based upon his adjustment and transition needs. (Id., Ex. 1, ¶ 8; Ex. 1a at Page 8 of 9).

**C.     Discussion**

The petition for writ of habeas corpus must be denied because Petitioner does not state a cognizable claim for relief. The habeas corpus statute, 28 U.S.C. § 2241, allows a federal inmate to challenge the BOP's execution, or "carrying out," of his sentence. See, e.g., Woodall, 432 F.3d at 241-42. The federal habeas court may only extend the writ to an inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner does not contend that he is in custody in violation of the Constitution or the laws of the United States. He does not argue that he is eligible to be designated to home confinement before his "10% date," that the BOP has misapplied any federal statute, or that any BOP regulation or policy is invalid. He simply requests that this court order BOP staff to exercise their discretion under the applicable statute, regulations, and policies in a manner such that he be

---

[4] Respondent states that the Unit Team's RRC recommendation was made in conformance with the holding of Woodall with full consideration of the factors set forth in Section 3621(b).

designated to home confinement on his "10% date." This federal habeas court has no authority to grant him the relief he requests.[5]

On April 17, 2008, Petitioner filed a "reply" in which he appears to be suggesting that this court may order his immediate release to home confinement because his sentencing court should have sentenced him to probation instead of a term of imprisonment. (Document # 12). This court has no jurisdiction to vacate or modify the sentence imposed. Such a request must be made pursuant to a 28 U.S.C. § 2255 motion and filed with the United States District Court for the District of New Jersey. See, e.g., Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976).

### D.     Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4(B), the parties are allowed ten (10) days from the date of service to file written objections to this Report and

---

[5] Respondent suggests that the petition may not be ripe for review because the BOP has not made a final decision regarding home confinement. If Petitioner made some claim that the BOP's execution of his sentence violated the Constitution or laws of the United States, the court would agree. However, because Petitioner has not stated a cognizable claim for relief, the petition must be denied on that basis.

Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


                                            /s/ Susan Paradise Baxter
                                            SUSAN PARADISE BAXTER
                                            Chief U.S. Magistrate Judge


Dated:  May 14, 2008